IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                              |   |                                |
|------------------------------|---|--------------------------------|
| JERRY FENZEL                 | : |                                |
|                              | : |                                |
| v.                           | : | Civil Action No. DKC 13-0379   |
|                              | : |                                |
| GROUP2 SOFTWARE, LLC ET AL   | : |                                |
|                              | : |                                |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract action is the motion of Plaintiff Jerry Fenzel to disqualify Defendants' counsel, the law firm of Shulman, Rogers, Gandal, Pordy & Ecker, P.A ("Shulman Rogers"), and to reopen discovery.  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6. For the following reasons, Plaintiff's motion to disqualify Defendants' counsel and reopen discovery will be denied.

I.  **Background**

A.  **Factual Background**

Plaintiff Jerry Fenzel met attorney Larry Shulman in 2006, when Mr. Shulman asked Plaintiff to serve on a non-profit board with him.  (ECF No. 73-3 ¶ 3).  In June 2010, Plaintiff entered into a retainer agreement with Shulman Rogers and paid a retainer fee of $1,500 in connection with the collection of monies owed to Plaintiff by Airtime Management, Inc. ("Airtime

collection matter"). (ECF No. 73-5). In November 2010, Don Rogers ("Rogers"), a partner with Shulman Rogers, informed Plaintiff about a potential opportunity to work as the Chief Executive officer ("CEO") of Group2 Software, LLC ("Group2"), which is owned by Thomas Bowen ("Bowen") (collectively, "Defendants"). (ECF No. 73-3 ¶ 4).

Several attorneys from Shulman Rogers, including Don Rogers and Robert Bartlett, participated in the negotiation and preparation of an employment contract between Group2 and Plaintiff (the "Consulting Agreement"), which led to Plaintiff accepting the position as a contract CEO of Group2. (ECF No. 73-3 ¶ 4). In April 2011, Shulman Rogers prepared a waiver of conflicts agreement and emailed it to the parties; it stated that Plaintiff and Thomas Bowen of Group2 were waiving any conflicts in order for Shulman Rogers to represent Plaintiff and Group2 in the negotiation and execution of the Consulting Agreement. Neither Plaintiff nor Defendant Bowen signed the conflict waiver agreement, however. Plaintiff did not have assistance from other counsel in connection with the negotiation and execution of the Consulting Agreement.[1]

---

[1] Plaintiff alleges that he believed Shulman Rogers was representing him and Group2 in the transaction, while Defendants argue that Plaintiff, an attorney, communicated to Rogers that he was representing himself in the matter to save money.

Plaintiff served as Group2's CEO from 2011 until May 2012, when a dispute arose between Plaintiff and Thomas Bowen and Plaintiff's employment relationship was terminated.

## B.   Procedural Background

Plaintiff filed his original complaint in the Circuit Court for Prince George's County alleging breach of contract and related claims against both Defendants.   On February 4, 2013, Group2 Software, represented by Shulman Rogers, removed this case to the United States District Court for the District of Maryland.   (ECF No. 1).   On December 23, 2013, after Mr. Bowen was served, Defendant Group2 filed a motion for a preliminary injunction (ECF No. 33), and Defendant Mr. Bowen filed a motion to dismiss.   A motions hearing was held on February 12, 2014, at which the motion for a preliminary injunction was denied and the motion to dismiss was deferred.   (ECF No. 38).   A scheduling order was entered on February 12, 2014, setting the following deadlines:   Plaintiff's amended complaint was due by March 7, 2014, discovery was to close on July 25, 2014, and motions were due by August 25, 2014.   (ECF No. 39).   Extensions of those deadlines subsequently were granted.

Plaintiff's current attorney, Philip Zipin, filed a notice of appearance on September 26, 2014.   (ECF NO. 70).   On October 14, 2014, after discovery closed, Plaintiff's new counsel filed a motion to disqualify Defendants' counsel, Shulman Rogers, and

to reopen discovery in order to depose several Shulman Rogers attorneys.[2]   (ECF No. 73).   Defendants filed an opposition on October 31, 2014 and requested sanctions against Plaintiff. (ECF No. 76).   Plaintiff replied on November 12, 2014.   (ECF No. 77).   Defendants filed a surreply on December 1, 2014.   (ECF No. 79).

## II.   Standard of Review

As explained in *Penn Mutual Life Ins. Co. v. Berck,* No. DKC 09-0578, 2010 WL 3294309, at *3 (D.Md. Aug. 20, 2010):

> A motion to disqualify is a 'serious matter,' *Plant Genetic Systems* [*N.V. v. Ciba Seeds*], 933 F.Supp. 514,] at 517 [(M.D.N.C. 1996)], which must be decided on a case-by-case basis.   *See Buckley v. Airshield Corp.,* 908 F.Supp. 299, 304 (D.Md. 1995).   This is so because two significant interests are implicated by a disqualification motion: 'the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community.' *Tessier [v. Plastic Surgery Specialists, Inc.*], 731 F.Supp. 724] at 729 [(E.D.Va. 1990)]; *Buckley,* 908 F.Supp. at 304.   Nevertheless, 'the guiding principle in considering a motion to disqualify counsel is safeguarding the integrity of the court proceedings.' *Plant Genetic Systems,* 933 F.Supp. at 517; *see Hull v. Celanese Corporation,* 513 F.2d 568, 572 (2d Cir.

---

[2] Defendants filed a consent motion for an extension of time to file dispositive motions and to stay proceedings until after a ruling on Plaintiff's motion to disqualify and reopen discovery is decided.   (ECF No. 74).   The court granted the motion for extension of time and directed the parties to submit a proposed schedule thirty days after the court rules on the motion to disqualify counsel.   (ECF No. 75).

> 1975) (finding that a party's free choice of
> counsel must yield to 'considerations of
> ethics which run to the very integrity of
> our judicial process.'). Thus, this court
> must not weigh the competing issues 'with
> hair-splitting nicety but, in the proper
> exercise of its supervisory power over the
> members of the bar and with a view of
> preventing an appearance of impropriety,
> [this Court] is to resolve all doubts in
> favor of disqualification.' *United States
> v. Clarkson,* 567 F.2d 270, 273 n.3 (4th Cir.
> 1977) (internal quotation marks and
> citations omitted); *Rogers v. Pittston Co.,*
> 800 F.Supp. 350, 353 (W.D.Va. 1992);
> *Buckley,* 908 F.Supp. at 304.

*Id.* (*quoting Zachair, Ltd. v. Driggs,* 965 F.Supp. 741, 750

(D.Md. 1997)). Because disqualification necessarily results in

the drastic result of a party losing its freely-chosen counsel,

the movant "bear[s] 'a high standard of proof to show that

disqualification is warranted.'" *Franklin v. Clark,* 454

F.Supp.2d 356, 364 (D.Md. 2006) (*quoting Buckley,* 908 F.Supp. at

304); *see also Aetna Cas. & Surety Co. v. United States,* 570

F.2d 1197, 1200-01 (4th Cir. 1978) (requiring that the district

court find that there is an "actual conflict" not just a

speculative conflict before disqualifying counsel).

Accordingly, the movant has the burden of proof as to all facts

necessary to show the rule of professional conduct that requires

the attorney's disqualification. *See Pennsylvania Nat'l Mut.*

*Cas. Ins. Co. v. Perlberg,* 819 F.Supp.2d 449, 454-55 (D.Md.

2011) (after reviewing movant's evidence in support of its

motion to disqualify under Rule 1.9, finding that the movant "has not satisfied the high burden of *proof* necessary to sustain a disqualification motion in *showing* it stood in an attorney-client relationship" with opposing counsel) (emphases added); *see also Victors v. Kronmiller,* 553 F.Supp.2d 533, 552-53 (D.Md. 2008) (denying movant's motion for disqualification because the movant failed conclusively to establish a conflict under Rule 1.9);[3] *cf. City of Cleveland v. Cleveland Elec. Illuminating Co.,* 440 F.Supp. 193, 207 (N.D.Ohio 1976) (describing the moving party's burden as being "imposed by several interrelated evidentiary hurdles" provided by the operative rule of professional conduct).

There is no set procedure for assessing a disqualification motion; rather, "the method of conducting the inquiry is within the discretion of the judge[.]" *United States v. Philip Morris Inc.,* 312 F.Supp.2d 27, 34 (D.D.C. 2004), *vacated in part on other grounds,* 220 F.R.D. 109 (2004) (*quoting Lefrak v. Arabian Am. Oil Co.,* 527 F.2d 1136, 1140 (2d Cir. 1975)). An

---

[3] In *Victors,* after reviewing the movant's evidence relevant to each element of Rule 1.9, Judge Motz noted that: "(1) it is dubious whether an attorney-client relationship existed [], (2) the matter at issue in the prior representation is not the same or substantially related to the challenged representation, and (3) the probability is low that confidences from the prior representation could be used [] in the current litigation, [thus,] I deny [movant's] motion to disqualify plaintiffs' counsel."

evidentiary hearing is not required, as long as the trial court determines that there is an adequate record for appellate review. *See In re Modanlo,* 342 B.R. 230, 233-34 (2006) (*citing Philip Morris,* 312 F.Supp.2d at 34-35) ("[A]s long as the trial court concludes that there will be an adequate record for appellate review, whether in the form of affidavits, documents, or submissions *in camera,* the court may in its discretion decide whether discovery [or a hearing] is [] warranted or inappropriate.").

## III. Analysis

The Maryland Rules of Professional Conduct ("MRPC"), which have been adopted by the Court of Appeals of Maryland, apply to disputes involving attorney conduct. Local Rule 704. Plaintiff argues that Shulman Rogers should be disqualified from representing Thomas Bowen and Group2 because the representation violates Rules 1.7, 1.9, and 3.7 of the MRPC. Defendants argue that Plaintiff's motion is factually unfounded and is merely "an untimely, tactical attempt by Plaintiff's now fourth (4th) attorney to delay this matter and improperly reopen discovery[.]" (ECF No. 76, at 1).

### A. Waiver Due to Delay

Defendants argue that Plaintiff has waived any conflict of interest because he was aware of "the alleged conflict in June 2012, but waited nearly [two and a half] years to bring the

instant motion." (ECF No. 76, at 2). Defendants cite *Gross v. SES Americom, Inc.*, 307 F.Supp.2d 719, 723-24 (D.Md. 2004), for the proposition that a movant waives any conflict of interest if it fails to raise the conflict for a significant period after litigation has begun. Defendants contend that "[f]iling a motion now, after the close of discovery, after attendance at mediation, after pending litigation for almost 30 months, is a blatant, strategic attempt to delay the instant matter and attempt to reopen discovery." (ECF No. 76, at 2).

Plaintiff responds that "'[t]imeliness' is a context specific legal concept[,]" and that in the context of this case, the motion to disqualify is timely. (ECF No. 77, at 1). Plaintiff's counsel asserts that he made this motion "as soon as practicable" after he reviewed the documents produced by Defendants, which clarified "the full range of the Firm's representation of Plaintiff[.]" (*Id.* at 2). In addition, Plaintiff argues that disqualification will not unduly prejudice Defendants as most of what has occurred in this case to date has been procedural rather than substantive. Plaintiff's new counsel adds that Shulman Rogers "was made well aware of this ethical problem from the outset of the case, yet failed to withdraw. Actions by Plaintiff's prior counsel in no way absolve the Firm of its ethical duty to avoid conflicts." (*Id.* at 3).

Although delay is an important factor to consider in determining whether to grant a motion to disqualify, delay alone, without consideration of the movant's reasons for delay, is not a sufficient reason to deny a motion.  As Judge Williams aptly noted in *Buckley v. Airshield Corp.,* 908 F.Supp. 299, 308 (D.Md. 1995), "there are no specific rules governing challenges based on timeliness.  This Court will not avoid its 'duty and responsibility of supervising the conduct of attorneys who appear before it' solely because a party delayed in raising the disqualification issue." *Id.* (internal citations omitted).  The *Buckley* court listed several relevant factors courts should consider when determining whether a movant has waived his right to contest the representation of an opposing party, including: (1) "when the movant learned of the conflict;" (2) "whether the movant was represented by counsel during the delay;" (3) "why the delay occurred, and, in particular, whether the motion was delayed for tactical reasons;" and (4) "whether disqualification would result in prejudice to the nonmoving party." *Buckley,* 908 F.Supp. at 307.  These factors encompass the primary reasons for requiring that parties *timely* serve a motion to disqualify: "curbing the potential of abuse of disqualification motions as a harassing or strategical tactic and reducing the detrimental effects to the opposing party." *Id.*

Plaintiff's delay in filing the motion to disqualify is *significant* — Plaintiff waited nearly two years after this case was removed to this court to file this motion. *See In re Modanlo,* 342 B.R. 230, 236-38 (finding that the movant's conflict of interest allegations were waived because he waited more than five months after learning of the conflict to file his motion); *see also Gross,* 307 F.Supp.2d at 723-24 (finding that the movant had waived its right to raise conflict allegations when it was aware of the conflict during the two years of negotiations preceding the lawsuit, but failed to file the motion to disqualify counsel until a year after the complaint was filed); *see also Reed v. Baltimore Life Ins. Co.,* 127 Md.App. 536, 563-64 (1999) (finding that the district court did not abuse its discretion by denying movant's motion to disqualify opposing counsel when movant was aware of the opposing counsel's conflict for one year before filing its motion).

Most, if not all, of the *Buckley* factors weigh against disqualification.   First, Plaintiff has known about this conflict from the day he filed the case, as he was aware that Shulman Rogers drafted the Consulting Agreement and that they would be representing Defendants.   Second, Plaintiff has been continuously represented (albeit disjointedly) by counsel, who could have raised this issue at the start of the case.   Indeed,

Plaintiff admits that he was aware of this alleged conflict from the outset of this case and raised it with Shulman Rogers as early as July 2012 and allegedly asked that the firm withdraw. (ECF No. 77, at 3).   Shulman Rogers refused, disagreeing with Plaintiff that there was a conflict, and at that point instructed Plaintiff to file a motion to disqualify if he thought it was necessary.   (ECF No. 76, at 14).   Plaintiff did not do so at that time.

Third, Plaintiff's reason for delay is not persuasive. Plaintiff alleges that his delay in filing the motion to disqualify was due to the fact that he did not have enough evidence prior to discovery to support the motion:   "prior to receiving the April 5, 2011 conflict waiver letter such a motion would have been premature, as definitive evidence from the Firm itself that an attorney-client relationship existed between the Firm and Plaintiff at the time of the May 1 [Consulting] Agreement was lacking."   (ECF No. 77, at 7).   Plaintiff argues that discovery revealed several communications that support disqualification, and thus, his motion is not untimely because discovery just closed in August 2014.   Plaintiff's timeliness argument is undercut, however, by his admission that he received and responded to an email from Shulman Rogers in April 2011 that included a draft of the Consulting Agreement and the conflicts waiver.   (ECF No. 73-1, at 3).   Moreover, if all movants were

permitted to wait until they have what they consider conclusive evidence to file a disqualification motion, it would encourage delays. Although it is not readily apparent that this motion was filed purely for strategic reasons to harass Defendants, the timing is suspect. Logically, if Plaintiff strongly believed that Shulman Rogers' representation of Defendants created a disqualifying conflict that would potentially harm his case, he would have raised this issue promptly to avoid injustice and better his chances of success. Finally, Defendants will certainly be prejudiced if they are required to hire new counsel, as a significant amount of time has already been spent litigating this case. If Defendants were forced to hire new counsel, this case would be further delayed, and Defendants would have to pay for duplicative legal work for their new counsel to get up to speed on this case. Accordingly, Plaintiff has waived his right to challenge this conflict. Even if Plaintiff's motion was timely, however, Plaintiff not met his burden of showing that disqualification is necessary in this case, as discussed below.

**B. Rule 1.7: Conflicts of Interest with an Existing Client**

Plaintiff argues that Shulman Rogers' representation of Defendants violates MRPC 1.7 because it is a conflict of interest for an attorney to sue an *existing* client on behalf of

another client.   Plaintiff alleges that he believed Shulman
Rogers was "acting as his counsel" during the negotiation and
drafting of the Consulting Agreement and he relied on the firm's
guidance.   He argues that Shulman Rogers acknowledged in its
April 5, 2011 conflicts waiver letter, which was produced
following negotiations with Defendants, that Plaintiff and
Group2 were existing clients.   According to Plaintiff, because
he was a current client at the time of the negotiation of the
Consulting Agreement with Defendants, Shulman Rogers is
prohibited under Rule 1.7 from choosing sides between its
clients and representing Group2, whose interests are directly
adverse to Plaintiff's interests.[4]

---

[4] Plaintiff also argues that Shulman Rogers' representation
of Defendants violates Rule 1.13(e) because a corporate lawyer
may not represent the interests of one owner against another
owner as it violates the general conflict of interest provision
in Rule 1.7.   (ECF No. 73-1, at 9-12).   Plaintiff asserts that
he is the *de facto* owner of Group2, as he has allegedly passed
the one-year mark of his employment agreement, which entitles
him to a 15% ownership interest in Group2.   Shulman Rogers
argues that Plaintiff does not own Group2, and the case law he
cites in support of this argument only pertains to current
owners or partners, not employees with potential claims to
ownership rights.   (ECF No. 76, at 22).   Shulman Rogers also
contends that "in the absence of an agreement by the parties to
the contrary, counsel providing legal advice to an entity is *not*
acting as counsel for its officers, directors, members or
employees." (ECF No. 76, at 14).   It asserts that while counsel
representing an organization may also represent its officers and
directors, such representation is only permitted with the
organization's consent, and Group2 never provided such consent
to Plaintiff.

In response, Shulman Rogers argues that it did not represent Plaintiff in the negotiation and drafting of the Consulting Agreement; rather, Plaintiff, a licensed Maryland attorney, decided to represent himself in the negotiation process, which Defendants allege is clear from the language used in the communications between the parties, both in emails and documents. (ECF No. 76, at 3). Defendants' counsel asserts that the conflicts waiver letter drafted on April 5, 2011, was not intended to allow Shulman Rogers to represent both Plaintiff and Defendants in the negotiation; rather, it was intended "to waive potential conflicts of prior, unrelated matters for each party, specifically for the Airtime collection matter relating to Plaintiff. Importantly, neither Plaintiff, nor Mr. Bowen signed the 'conflict waiver' letter, as it was discovered and confirmed that Plaintiff no longer had any pending matters with Shulman Rogers." (ECF NO. 76, at 4). Shulman Rogers adds that the fact it never billed Plaintiff for the Consulting Agreement, while it did bill Thomas Bowen, evidences that the firm only represented Defendants during the negotiation and drafting process and not Plaintiff.

---

Plaintiff's argument regarding the firm's violation of MRPC 1.13(e) is unavailing, as it relies on the improper premise (discussed below) that an attorney-client relationship existed between Plaintiff and Shulman Rogers.

MRPC 1.7 states, in relevant part, that "a lawyer shall not represent a client if the representation involves a conflict of interest.   A   conflict   of   interest   exists   if  .  .  .   the representation of one client will be directly adverse to another client."   MRPC 1.7(a)(1).   Comment 6 to Rule 1.7 clarifies that "[l]oyalty     to     current     clients     prohibits     undertaking representation   directly   adverse   to   that   client   without   that client's   informed   consent."     Plaintiff's   argument   regarding Shulman Rogers' violation of Rule 1.7 depends on establishing that he: (1) is presently a *current* client of Shulman Rogers, or (2) was a *current* client of the firm in May or June of 2012 when the dispute over the Consulting Agreement arose and Shulman Rogers stepped in to represent Group2 and Thomas Bowen in the dispute.

In *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Perlberg,* 819 F.Supp.2d 449, 453-54 (D.Md. 2011), a case involving a motion to disqualify   based   on   MRPC   1.9,   Judge   Blake   discussed   what constitutes an attorney-client relationship under Maryland law:

> The   Maryland   Court   of   Appeals   has
> "acknowledge[d]   that   determining   'what
> constitutes   an   attorney-client   relationship
> is   a   rather   elusive   concept.'"   *Attorney
> Grietevien Comm'n v. Shoup,* 410 Md. 462, 979
> A.2d   120,   135   (2009)   (*quoting   Attorney
> Grievance   Comm'n   v.   Shaw,*   354 Md. 636, 732
> A.2d 876, 883 (1999)).   Such a relationship
> may   arise   through   an   explicit   agreement   or
> "by   implication   from   a   client's   reasonable
> expectation   of   legal   representation   and   the

attorney's failure to dispel those expectations." *Attorney Grievance Comm'n v. Brooke,* 374 Md. 155, 821 A.2d 414, 425 (2003).

In other contexts, it has been noted that "an attorney-client relationship can be implied from the conduct of the parties, such conduct must evidence an offer or request by the client for legal services and an acceptance of the offer by the attorney." *See Wong v. Aragona,* 815 F.Supp. 889, 896 (D.Md. 1993) (*quoting Stainton v. Tarantino,* 637 F.Supp. 1051, 1066 (E.D.Pa. 1986) (internal quotation marks omitted)) (proving the existence of an attorney-client relationship in a legal malpractice claim); *see also Davis v. York Int'l Corp.,* No. HAR 92-3545, 1993 WL 180224, at *1-2 (D.Md. May 24, 1993) (noting that the subjective approach in determining whether an attorney-client relationship exists requires courts to look "to the nature of the work performed and to the circumstances under which the confidences were divulged" and "an attorney-client relationship is said to exist when the party divulging confidences . . . believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice").

Plaintiff has not produced evidence to establish the existence of an attorney-client relationship between himself and Shulman Rogers in May and June 2012, when the dispute arose between Plaintiff and Defendants. Indeed, the email

correspondence provided by the parties shows that, when the dispute arose between Group2's owner and Plaintiff, Shulman Rogers was not serving as Plaintiff's counsel. (ECF Nos. 73-10 and 76-7). In Plaintiff's July 10, 2012 email to Mr. Rogers of Shulman Rogers, Plaintiff implicitly acknowledges that the firm is solely representing Defendants' interests, by stating "you guys blew it when you advised *your* client to terminate my arrangement with Group2 as of May 24, 2012." (ECF NO. 76-7) (emphasis added). Plaintiff also states in this email: "I don't take lightly being accused and screwed by lawyers who were my friends and are fellow members of the Bar; who advised *their* client not to pay me my pauper wages[.]" (*Id.*) (emphasis added). Plaintiff's own statements reveal that he did not reasonably believe Shulman Rogers was representing his interests at this time, as he uses the pronouns *your* and *their*, acknowledging his understanding that Shulman Rogers is serving his opponents' interests as their counsel. Plaintiff also received an email from Mr. Etelson[5] on May 24, 2012, noting that Mr. Etelson had spoken with Thomas Bowen regarding the recent dispute, and stating that "Thom believes it is best that your consulting with Group2 end. He sent you the below email and what he states therein stands." (ECF No. 73-10). Mr. Etelson's

---

[5] Mr. Etelson is counsel of record in this lawsuit.

statements firmly advocate for Group2's position, and confirm that he is stepping into the dispute on behalf of his clients, Group2 and Thomas Bowen.[6]   No reasonable person, and especially an attorney with legal training, could conclude from Mr. Etelson's statements — or Plaintiff's own statements for that matter — that either party believed Shulman Rogers was representing Plaintiff.       Furthermore, Plaintiff cannot reasonably believe that he is *presently* a client of Shulman Rogers when they have been representing his adversary in this litigation for two years, and has disclaimed representing him since 2012.   Plaintiff has not met his burden of proving that Defendants must be disqualified based on a violation of MPRC 1.7 because he has not produced any evidence establishing that an attorney-client relationship existed or that he reasonably believed that he was a client of Shulman Rogers when this dispute arose.

### C.   Rule 1.9:   Conflict of Interest with a Former Client

In the alternative, Plaintiff argues that even if the court concludes that he is not an existing client of Shulman Rogers,

---

[6] Plaintiff also asserts that he rented space from the firm and that the firm sent him a few documents from the Maryland Department of Assessments and Taxation's website.   Just because Plaintiff rented office space from Shulman Rogers and maintained some communications with the firm during 2011, however, does not indicate that an attorney-client relationship exists.   Plaintiff has not produced any communications with the firm or bills from the firm, indicating that he engaged Shulman Rogers for legal advice following the Airtime collection matter in 2010.

he is a former client of the firm; accordingly, he contends that the firm is prohibited under Rule 1.9 from representing Defendants — whose interests are materially adverse to Plaintiff's — in matters that are the same or substantially related to the matter in which Shulman Rogers previously represented Plaintiff.   (ECF No. 73-1, at 7).   Plaintiff contends that Shulman Rogers provided him advice in the negotiation of the Consulting Agreement with Group2, which is the subject matter of this litigation.   In addition, Plaintiff argues that this conflict is imputed to the entire law firm under Rule 1.10, disqualifying all attorneys from Shulman Rogers, not just the attorneys who previously were involved in the drafting and negotiation of the Consulting Agreement. Although Shulman Rogers produced a conflict waiver letter, Plaintiff maintains that he never waived the conflict of interest in the negotiation and execution of the Consulting Agreement and that there is no written confirmation of his waiver.   Furthermore, Plaintiff asserts that even if he waived the conflict with respect to the firm's initial negotiation and execution of the Consulting Agreement, he has not waived the conflict regarding Shulman Rogers' representation of Defendants in this litigation.

    Defendants respond that Shulman Rogers' only representation of Plaintiff has been in the Airtime collection matter, which

concluded in 2010 and is wholly unrelated to the Group2 Consulting Agreement.   The firm could not have obtained any confidential information about Plaintiff that could be used adversely in the present matter.   (ECF No. 76, at 19). Furthermore, Plaintiff could not have reasonably believed that Shulman Rogers was acting as his counsel in May 2011 or May 2012 in connection with the Consulting Agreement with Group2, when it had not given him any legal advice since the Airtime collection matter ended in September 2010.   Defendants state that Plaintiff, a licensed Maryland attorney, who is familiar with the rules for attorney-client relationships is trying to "manufacture an argument that he had an ongoing 'relationship' with Shulman Rogers[.]"  (ECF No. 76, at 5).   Defendants assert that Plaintiff told Mr. Rogers that he did not need to seek independent counsel to represent him in the negotiation of the Consulting Agreement and that he would represent himself to save money.   Defendants also argue that Plaintiff did not convey any confidential communications to Shulman Rogers regarding the Consulting Agreement as Mr. Bowen was copied on every correspondence, or during its representation of him in the Airtime collection matter, an unrelated matter.

MRPC 1.9 provides that a "lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in

which that person's interests are materially adverse to the
interests of the former client unless the former client gives
informed consent, confirmed in writing." MRPC 1.9(a). Comment
3 to Rule 1.9 states that:

> Matters are 'substantially related' for the
> purposes of this Rule if they involve the
> same transaction or legal dispute or if
> there otherwise is a substantial risk that
> confidential factual information as would
> normally have been obtained in the prior
> representation would materially advance the
> client's position in the subsequent matter.

Plaintiff's arguments regarding Rule 1.9 hinge on whether
he can establish that he was a former client of Shulman Rogers
in a matter that substantially relates to the present litigation
over the Consulting Agreement. *See Victors,* 553 F.Supp.2d at
551-52 ("To succeed on a disqualification motion, the moving
party must establish, first, that an attorney-client
relationship existed between the challenged law firm and the
objecting client, and second, that the matter at issue in the
challenged representation is the same or substantially related
to the matter involved in the prior representation.")

Plaintiff has not provided any facts establishing that
Shulman Rogers' representation of him in the 2010 Airtime
collection matter substantially relates to the present
litigation, nor that Shulman Rogers obtained any confidential
information during that representation that would materially

advance Defendants' position in this matter.  As for the present matter, there is no question that this litigation, which involves a dispute over the terms of the Consulting Agreement and the parties' given rights and obligations with respect thereto, is substantially related to the previous work of Shulman Rogers in drafting and negotiating the Consulting Agreement.  Thus, the remaining issue is whether Plaintiff has established that an attorney-client relationship existed between himself and Shulman Rogers during the negotiation and drafting of the Consulting Agreement, such that Shulman Rogers should be disqualified from representing Defendants in order to avoid a substantial risk that they will use Plaintiff's confidential information to materially advance Defendants' position here.

Plaintiff has not met his burden in establishing that an attorney-client relationship existed during the drafting and negotiation of the Consulting Agreement, or that Shulman Rogers acquired any confidential information related to his interests during this process.  Importantly, as part of Plaintiff's burden he must show that he reasonably believed an attorney-client relationship existed with Shulman Rogers, and provide evidence to support this belief.  This case has now passed the discovery stage yet Plaintiff's evidence that an attorney-client relationship existed is ambiguous at best.  *See Victors,* 553 F.Supp.2d at 553 (denying movant's motion to disqualify counsel

under MRPC 1.9 because the evidence that an attorney-client relationship existed was "dubious"). Plaintiff points to a conflicts waiver letter drafted by Shulman Rogers on April 5, 2011, which states in relevant part:

> We act as counsel to Jerry Fenzel and Group 2 Software, LLC in a variety of business matters, and specifically with regards to the operation of Group 2 Software, LLC, a company wholly owned by Thomas Bowen. In addition, we have on-going work for Messrs. Fenzel and Bowen. *We have been asked to represent Mr. Fenzel and Group 2 Software, LLC in preparing a consulting agreement that they will both be party to.* We believe that we can accept this representation if each of you consents.

(ECF No. 73-12) (emphasis added). Plaintiff and Defendants acknowledge that this conflicts waiver was a circulated draft that was never executed by the parties, meaning the parties never adopted any of the provisions in the letter, nor waived any alleged conflicts. Moreover, based on the April 19, 2011 email from Mr. Rogers, it appears that the parties did not receive this conflicts waiver until most of the negotiation and drafting process had taken place.[7]  (ECF No. 73-13, at 3). Plaintiff also references an email where he purports to be

---

[7]  The discussions surrounding Plaintiff's potential employment with Group2 began by November 2010 (ECF No. 73-7), yet, Mr. Rogers apparently did not send the conflicts waiver letter to the parties until April 19, 2011. (*See* ECF No. 73-13, at 3) ("My apologies.  It seems that for some reason, the revised Consulting Agreement and conflict waiver was never forwarded to you, even though it was prepared 3 weeks ago.").

relying on guidance from Shulman Rogers during the negotiations process.   (ECF Nos. 73-13, at 1).   In the email, he asks Mr. Rogers:   "Do you think that my 15% interest should accelerate, along with any deferred comp, if there was a change in control?" This statement, taken alone, suggests that he may be relying on Shulman Rogers for legal advice in this negotiation.   When this statement is read in context,[8] however, and in conjunction with the other emails between Shulman Rogers and Plaintiff, it becomes clear that Plaintiff is not asking advice, but negotiating on his own behalf to obtain favorable compensation terms.   Indeed, consistently throughout the negotiation and drafting process, Shulman Rogers addresses Plaintiff as if he is

---

[8]   Plaintiff's April 28, 2011 email to Mr. Rogers, in relevant part, states:

> Do you think that my 15% interest should accelerate, along with any deferred comp, if there was a change in control?   I think my email of last week is rather concise and makes it very clear as to what I requested initially.   I think the various versions of the 1.5 page of the term sheet have gravitated away from what I initially thought was fair and reasonable.

Plaintiff's email shows that he is dissatisfied with Shulman Rogers drafting of his proposed terms. Indeed, he had previously asked that this particular term be added or clarified in his April 22, 2011 email to Shulman Rogers (ECF No. 73-13, at 2), and Mr. Rogers responded to Plaintiff on April 27, 2011 stating: "If your only change is that you wish to get paid if Group2 is sold during the first 12 months, then we'll revise the Consulting Agreement to provide that you get your deferred comp and 15% interest.   If that works let me know." (*Id.* at 1).

the opposing party in a negotiation, not as if he is a client. Accordingly, the two ambiguous sentences cited by Plaintiff as evidence of an attorney-client relationship are insufficient to meet his burden of proof, especially in the face of the numerous instances wherein Plaintiff negotiates on his own behalf.[9]   No reasonable person who believes he is represented by counsel would expect to negotiate on his own behalf against his own counsel.   *See Wong,* 815 F.Supp. at 896 (finding that there was no evidence in the record supporting that Mr. Wong relied on defendants for legal advice, "[t]o the contrary, the record reveals that Mr. Wong actively negotiated with the defendants and spoke with them as one businessman addressing another").   In addition, Plaintiff could not produce an engagement letter, bills, or emails supporting an attorney-client relationship in

---

[9]   The parties included various letters and emails as exhibits.   The following statements support that Plaintiff was representing himself in the drafting of the Consulting Agreement and Shulman Rogers was representing Thomas Bowen and Group2: (1) on May 16, 2011 Mr. Rogers emailed Plaintiff, stating "I have substantially adopted your revisions to the Consulting Agreement . . . .   I hope we now have a final agreement[.]" (ECF No. 73-9, at 3); (2) on March 8, 2011 Mr. Rogers emailed Plaintiff, stating "I am back in town and I will discuss your comments with Thom."   (*Id.* at 5); (3) on March 2, 2011 Plaintiff emailed Mr. Rogers, stating "Thanks for getting this proposal to me.   I am in general agreement with the terms of this offer, although I think the equity component a little light . . . [m]aybe my voluntary efforts to date . . . could be quantified by some (restricted?) equity ownership in Group2."   (ECF No. 73-9, at 6); (4) on March 2, 2011, Mr. Rogers wrote a proposed offer letter, which started out "Dear Jerry, *On behalf of Thomas C. Bowen*, we would like to propose the following principal terms[.]"   (ECF No. 76-1, at 3) (emphasis added).

this matter.  In contrast, he has such documentation to support Shulman Roger's representation of him in the Airtime collection matter, which further supports that no attorney-client relationship existed for the Consulting Agreement.  Moreover, as Defendants point out, Thomas Bowen was copied on every email between Plaintiff and Shulman Rogers.  Thus, even if an attorney-client relationship existed with Plaintiff, Shulman Rogers did not acquire any *confidential* information because Thomas Bowen was a party to each communication, which destroys Plaintiff's claim to confidentiality.  Shulman Rogers will not be disqualified under Rule 1.9, as Plaintiff has not met his burden of showing that an attorney-client relationship existed between himself and the firm in negotiating and drafting the Consulting Agreement.

### D. Rule 3.7: Attorney Prohibited from Representing a Client in a Case Where the Attorney Needs to Testify as a Fact Witness

Plaintiff argues that Shulman Rogers is prohibited from representing Defendants in this litigation because Shulman Rogers' attorneys will be required to testify adversely to Defendants as fact witnesses in this case.  Plaintiff argues that Shulman Rogers' attorneys will be required to provide parol evidence, likely in the form of testimony, regarding ambiguities in the May 1 and June 2 Consulting Agreements that the firm drafted and the intent of the parties regarding which version of

26

the Consulting Agreement controls.   (ECF No. 73-1, at 13).
Plaintiff alleges that he approached a Shulman Rogers attorney
regarding the June 2 Consulting Agreement, and was told that it
was of no legal consequence, advice on which he relied.   Because
these factual disputes regarding the Consulting Agreement
between the parties is at the heart of this dispute, Plaintiff
argues that Shulman Rogers should be prohibited from
representing Defendants in order to avoid confusion over its
attorneys acting in a dual roles as witnesses and attorneys.
Plaintiff cites *Moyer v. 1330 Nineteenth St. Corp,* 597 F.Supp.
14, 16 (D.D.C. 1984), for the proposition that "[w]hen the
lawyer's testimony is or may be prejudicial to the client, the
lawyer has a conflict of interest, and the prohibition on acting
as an advocate extends not only to the lawyer but also to his or
her firm."   Plaintiff argues that Mr. Rogers' testimony and the
testimony of other Shulman Rogers' attorneys who were involved
in the "drafting, negotiation, and execution of the May 1 and
June 2 [Consulting] Agreements, will be material to this case
and harmful to Defendants," thus, they should be forced to
withdraw from this matter. (ECF No. 73-1, at 14).

    In response, Shulman Rogers argues that its litigation
counsel assigned to this case — Glenn Etelson and William
Schroeder — will not be witnesses in this matter "as they have
no personal knowledge or information as to the formation or

27

negotiation of the Consulting Agreement." (ECF No. 76, at 8). Defendants' counsel asserts that they were not involved in the negotiation or formation of the Consulting Agreement as evidenced by the emails attached to the filings, and that Mr. Etelson only became involved with Group2 once a dispute arose in May 2012. (ECF No. 76, at 8).

MRPC 3.7(b) states that a "lawyer may act as [an] advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." Shulman Rogers has indicated that its litigation attorneys, Mr. Etelson and Mr. Schroeder, were not involved in the negotiation and drafting of the Consulting Agreement. Therefore, they have no personal knowledge and could not appropriately be called as witnesses at trial. As noted above, their representation is not precluded under Rules 1.7 or 1.9, thus they may serve as advocates under Rule 3.7(b). Mr. Rogers, Mr. Barlett, or other Shulman Rogers attorneys involved in drafting the Consulting Agreement may be called as witnesses; there is no risk in confusing the jury because they will not be serving as advocates for Defendants at trial.

## IV. Conclusion

For the foregoing reasons, the motion of Plaintiff Jerry Fenzel to disqualify Defendants' counsel, Shulman Rogers, and to reopen discovery will be denied. Defendants' request for

sanctions against Plaintiff for filing this motion will also be denied.  Although the court finds that Plaintiff has not met his burden in showing that a disqualification is required, Plaintiff has some factual and legal bases for making its motion.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
